# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| SECURUS TECHNOLOGIES, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>GLOBAL TEL*LINK CORPORATION,<br><br>    Defendant. | CIVIL ACTION NO. 3:13–CV–03009–K |

**PLAINTIFF/COUNTERCLAIM–DEFENDANT SECURUS TECHNOLOGIES, INC.'S
REPLY IN FURTHER SUPPORT OF ITS RULE 12(c) MOTION FOR JUDGMENT ON THE PLEADINGS**

Securus' Motion for Judgment on the Pleadings showed that the *claims* in the '359 and '171 patents are directed to a patent-ineligible abstract idea, that the additional *claim elements* do not transform the claims into a patent-eligible application, and that both patents are therefore invalid under 35 U.S.C. § 101. In contrast, Global Tel*Link Corporation's ("GTL's") Response ignores the claim language, relying instead on conclusory statements and unsupported characterizations to argue, incorrectly, that its patents are "like the patents" (Response at 15) in a couple of other cases where the patent claims survived a Section 101 challenge.

GTL's failure to identify any patentable claims is fatal. As the Supreme Court explained in *Alice Corp.*, the patent-eligibility analysis focuses on the claim language — first, to determine if the claims are directed to a patent-ineligible concept such as an abstract idea, and if so, "the *elements of each claim* both individually and 'as an ordered combination,'" are analyzed "to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." Under the required analysis, the Court should grant Securus' Motion.

**A. The claims '359 and '171 patents are directed to the abstract idea of determining whether an inmate has had unauthorized communications.**

While carefully avoiding the claim language, GTL's Response first decries Securus' characterization of the abstract idea in the asserted patents, suggesting that prison and law-enforcement officials actually authorize inmates to have communications with security-threat groups like gangs and terrorist organizations. GTL's arguments, however, are belied by the disclosures in the patents themselves.

Without citation to anything whatsoever, GTL states:

> The patents are not concerned with preventing unauthorized calls; they are concerned with gathering useful intelligence from calls that can be used to aid investigations of unlawful or improper conduct. Indeed, calls made by inmates associated with security threat groups are overwhelmingly *authorized* calls, not unauthorized calls . . . .

Response, at 1. GTL's assertions are not only unsupported by the asserted patents, they are simply wrong. Indeed, the patents never say that *any* calls to security threat groups are

authorized — this is something that GTL simply plucked from the air.

Still, the claim language contrasts sharply with GTL's rationalization that correctional officials authorize inmates to communicate with security threat groups. While that might happen in some situations, the patent claims do not address such communications. Claim 1 of the '359 patent is illustrative. Its preamble states: "A method for identifying telephone call activities *that pose potential security threats*." Appendix, Ex. A at 11:63–64 (claim 1) (emphasis added) [App. 14]. The disclosures of the '359 patent, and indeed common sense, refute GTL's position that prisoners are *authorized* to have communications "that pose potential security threats."

In addition, the '359 patent explains that the problem addressed by the patent is the "serious *abuse of the telephone system* [that] has been noted relating, in particular, to inmate participation in *security threat group activity*." Appendix, Ex. A at 1:29–31 (emphasis added) [App. 9]. It defies logic for GTL to argue that, despite the patent's recognition that "participation in security threat group activity" constitutes "abuse of the telephone system," those calls are "overwhelmingly authorized" by prison and law-enforcement officials. As Securus properly demonstrated, the '359 patent simply claims the abstract idea of determining whether an inmate has had unauthorized communications. GTL's arguments to the contrary are meritless.

The '171 patent claims are also directed to the abstract idea of determining whether an inmate has had unauthorized communications, albeit in the context of inmate-employee fraternization. Claim 1 states: "[a] method of discovering inmate-employee fraternization." Appendix, Ex. B at 10:13–14 [App. 29]. The patent explains that "serious abuse of the telephone system has been noted relating, in an exemplary instance, to improper inmate-employee fraternization." *Id.* at 1:33–35 [App. 25]. GTL does not contend that such abuse is authorized.

Claim 1 in each of the '359 and '171 patent is representative of the abstract idea.

| '359 Patent | '171 Patent |
|---|---|
| 1. A method for identifying telephone call activities that <u>pose potential security threats</u>, comprising: | 1. A method of <u>discovering inmate-employee fraternization</u> comprising:<br>monitoring a plurality of inmate |

| | |
|---|---|
| storing <u>first information regarding security threat groups</u>;<br><br>storing <u>second information regarding inmates known to be affiliated with the security threat groups</u>;<br><br>storing <u>call detail records</u> associated with telephone calls to or from inmates associated with a correctional facility; and<br><br>using the call detail records and the first and second information to <u>identify telephone call activity associated with one of the security threat groups</u>. | communications;<br><br><u>comparing</u> the plurality of monitored inmate communications <u>to information relating to inmates and employees located in a database</u>;<br><br><u>determining</u>, based at least on the results of the comparing, <u>if one or more of the plurality of communications indicate that an employee and inmate are fraternizing</u>; and<br><br><u>performing a predetermined action</u> if one of the plurality of communications indicates that the employee and inmate are fraternizing. |

In each of these claims, one piece of information (e.g., a dialed phone number) is compared to another piece of information (e.g., a list of phone numbers associated with security threat groups ('359 patent) or phone numbers of employees ('171 patent)) to determine if the communication was unauthorized (e.g., to identify call activity associated with a security threat group ('359 patent) or to identify fraternization between inmates and employees ('171 patent)). Comparing a first piece of information to a database of information and then taking some action if there is a match is a generic process used throughout everyday life, including in law enforcement. Motion, at 6–7. GTL does not dispute that dinner reservations, facility-access authentication, or police checking license-plate numbers are generic processes that apply the same basic steps. Instead, GTL incorrectly argues, without support, that applying these generic processes in the field of inmate telecommunications somehow makes them patent-eligible.

GTL contends that the '359 and '171 patents are not directed to abstract ideas because they are allegedly not directed to "mathematical algorithms," "fundamental economic and conventional business practices, or "fundamental laws of nature," in particular, because they allegedly "accomplish their goals by physically integrating disparate data sources with an inmate telecommunications system to analyze telephone call records to detect problems unique to prisons." Response, at 6–7. This conclusory statement does not refer to and is not supported by the language of the asserted claims.

GTL incorrectly argues that the limitation of the patents to inmate-telecommunications systems renders the claims patent-eligible. As the Supreme Court has explained, "limiting the use of an abstract idea 'to a particular technological environment,'" is not enough for patent eligibility. *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2358 (2014) (quoting *Bilski v. Kappos*, 130 S. Ct. 3218, 323 (2010)). In *Cogent Medical, Inc. v. Elsevier Inc.*, 70 F. Supp. 3d 1058, 1065 (N.D. Cal. 2014), the court rejected the same argument GTL makes here, concluding that limiting the patent claims to a particular field (there, the medical field) did not render the claimed abstract ideas patent eligible. Moreover, GTL's argument is directly contrary to the position it took in its Petition for Post-Grant Review of Securus' '280 patent just this past May. There, GTL stated: "[T]hat one of the parties is an inmate, is merely a field of use limitation that amounts to 'token postsolution components [that do] … not make the concept patentable.'"[1]

GTL's present reliance on the Federal Circuit's opinion in *DDR Holdings* is misplaced and fails to save the '359 and '171 patents. In *DDR Holdings*, the Federal Circuit conducted a detailed analysis of the patent's *claims* and determined that the *claims* were patentable because "they recite a specific way to automate the creation of a composite web page by an 'outsource provider' that incorporates elements from multiple sources in order to solve a problem faced by websites on the Internet." *DDR Holdings, LLC v. Hotels.com LP*, 773 F.3d 1245, 1259 (Fed. Cir. 2014). In sharp contrast, here GTL consciously avoids any mention of the patent claims, arguing in a cursory fashion instead that the patents attempt to solve problems in the field of prison telecommunications systems. *See* Response, at 8 (failing to cite or identify any claim limitation allegedly solving a problem unique to prison telecommunications systems).[2]

---

[1] *See* Petition for Post Grant Review in PGR2015-00013, at 10 (quoting *Bilski v. Kappos*, 561 U.S. 593, 612 (U.S. 2010)) (alteration in original) (pleadings available at PTO's website: https://ptabtrials.uspto.gov/ (search for PGR2015-00013); GTL's petition is also available at http://fishpostgrant.com/wp-content/uploads/PGR2015-00013.pdf).

[2] GTL asserts that the '359 and '171 patents state that the expansion of telecommunications systems has made "it *impossible* to monitor these calls either manually or with pre-existing technology." Re-

### B. GTL cannot avoid invalidity by arguing that the abstract idea does not preempt all ways of determining if an inmate has had unauthorized communications.

GTL argues that there are multiple ways of determining if an inmate has had unauthorized communications, and thus, the abstract idea does not preempt all ways of implementing the idea. Response at 12–14. GTL misstates the law. Indeed, while preemption concerns may guide the Section 101 analysis, the test is not whether the claims avoid complete preemption. To be ineligible, the claims do not need to preempt all ways of determining if an inmate has had unauthorized communications. *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015) ("While preemption may signal patent ineligible subject matter, the absence of complete preemption does not demonstrate patent eligibility."). The established test is whether the additional elements of the claims supply an inventive concept. *See Alice*, 134 S. Ct. at 2355. This second prong of the *Mayo* test is how undue preemption is avoided. *See Ariosa*, 788 F.3d at 1379 ("[Q]uestions on preemption are inherent in and resolved by the § 101 analysis. . . . Where a patent's claims are deemed only to disclose patent ineligible subject matter under the *Mayo* framework, as they are in this case, preemption concerns are fully addressed and made moot.").

Rejecting the argument GTL makes here, the court in *Personalized Media Communications, LLC v. Amazon.com, Inc.* invalidated claims directed to the abstract idea of decryption, stating: "[W]hile there is no question that preemption is an important policy concern underlying patent eligibility, whether the claim preempts all decryption is not the test for patent eligibility." 2015 WL 4730906, at *6 (D. Del. Aug. 10, 2015). The '359 and '171 patent claims fail the *Mayo* test, and thus, GTL's preemption argument does not render them patent-eligible.

### C. GTL failed to rebut Securus' showing that the broadest claims can be performed in the human mind using paper records.

In its Motion, Securus established that claim 1 in the '359 patent and claim 1 in the '171

---

sponse, at 8 (emphasis added). This is false. The patents merely explain that given limited monitoring resources, the inventions allow for better use of those resources. *See* Appx., Ex. A at 2:1–10 [App. 9].

patent do not require the use of any computerized equipment, but rather, could be performed using mental processes and paper files. *See* Motion, at 18–19. GTL responds by arguing that CDRs "are a specific type of electronic record generated by a telecommunications system and which are a fundamental part of GTL's patents." Response, at 11.

The patents explain, however, that CDRs are simply records that "typically include the name of the inmate (and/or inmate identification number), the inmate's location, the number called and the date, time and duration of the call." Appendix, Ex. A, at 1:50–56 [App. 9], Ex. B, at 1:53–59 [App. 25]. This information can be recorded using pen and paper. Thus, GTL's assertion that "call detail record" has a technological meaning precluding judgment on the pleadings is refuted by the broad definition of that term in the patents. Moreover, GTL's position here is contrary to its position on the same issue in its PTO challenge to Securus' patent.[3]

The Federal Circuit has made clear that claims performable solely through mental processes or using "a pen and paper" are not patent-eligible. *See CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011). Here, because claim 1 of the '359 patent and claim 1 of the '171 patent are capable of being performed in the human mind with only paper records, they are patent ineligible and therefore invalid under Section 101.[4]

**D. At most, the claims include only generic computerized elements.**

Because the '359 and '171 patent claims are directed to a patent-ineligible abstract idea, the analysis turns to the second step of the *Mayo* framework, which examines the additional elements of the claims to determine whether they contain an inventive concept that ensures the

---

[3] *See* Petition for Post Grant Review in PGR2015-00013, at 9–10, 8 (pleadings available at PTO's website: https://ptabtrials.uspto.gov/ (search for PGR2015-00013); GTL's petition is also available at http://fishpostgrant.com/wp-content/uploads/PGR2015-00013.pdf).

[4] GTL argues that claim 5 of the '359 patent is patent eligible because it "requires the analysis of four sources of information." Response, at 14 n.5. GTL cites no authority for its incorrect suggestion that patent-eligibility depends on the sheer number of inputs to an abstract process. Claim 5 can be performed mentally using paper records, and is thus, patent ineligible. *CyberSource*, 654 F.3d at 1372.

patent covers something "significantly more than" the patent-ineligible matter itself. *Mayo Collaborative Servs v. Prometheus Labs.*, 132 S. Ct. 1289, 1293–94 (2012). To the extent the '359 and '171 patents add anything to the abstract idea of determining whether an inmate's communications are unauthorized, they add only non-patent-eligible basic electronic implementation by using a general-purpose computer and conventional computer components. *See* '359 patent, claim 13 ("computer-readable medium," "processor"), claim 14 ("memory"); '171 patent, claim 17 ("information storage media"). But "it is clear that the recitation of generic computer limitations does not make an otherwise ineligible claim patent eligible." *Jericho Sys. Corp. v. Axiomatics, Inc.*, No. 3:14–CV–2281–K, 2015 WL 2165931, at *7 (N.D. Tex. May 7, 2015).

  GTL does not seriously contend that "database," "computer-readable medium," "processor," "memory," or other claim limitations depict specialized components for the claimed inventions. Nor could it. Instead, GTL makes a couple of passing references to the "monitoring module" that is found in some claims of the patents to argue for patent eligibility. *See, e.g.*, Response, at 16, 17. GTL does not suggest, however, that a person skilled in the art would understand "monitoring module" to define a particular patentable implementation. GTL's silence on that point is not surprising, given that the patents explain that the module is, indeed, generic. *See, e.g.*, Appendix, Ex. B at 4:23–25 ("[T]he term **module** as used herein **can be any device, software or combination of hardware and software** configured to perform at least one particular function.") (emphasis added) [App. 26]; *see also* Ex. A at 3:55–57 (same) [App. 10].

  The generic nature of the "modules" in the '359 and '171 patents is consistent with the entirety of the disclosures of the patents, which go to great lengths to explain that the alleged inventions can be implemented on a general-purpose computer, in hardware or software or both, and through generic off-the-shelf software products like Java or CGI script. *See* Motion, at 19–20. Using such generic elements does not save GTL's patent claims. *See Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Can. (U.S.)*, 687 F.3d 1266, 1278 (Fed. Cir. 2012).

E.   **GTL's reliance on *DDR Holdings* and *TQP Development* is misplaced.**

GTL's Response avoids discussing this Court's recent opinion in *Jericho Systems*, instead choosing to argue that its patents are similar to the patents in *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014) and the pre-*Alice* Eastern District of Texas opinion in *TQP Development LLC v. Intuit Inc.*, No. 2:12–CV–180–WCB (E.D. Tex. Feb. 19, 2014). Neither of these cases establishes that GTL's patents meet the requirements for patentability.

In *DDR Holdings*, the Federal Circuit upheld the patent eligibility of patent claims directed to the operation of a website because "the ***claimed*** solution" was "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *DDR Holdings*, 773 F.3d at 1257 (emphasis added). Trying to fit *DDR Holdings* to its patents, GTL says that its patents are "necessarily rooted" in "telecommunication system technology." Response, at 8. But in making this argument, GTL does not point to anything in ***the claims*** that allegedly is rooted in telecommunication system technology, citing instead only to the Background, Summary of the Invention, and figures of the patents, thereby rendering irrelevant its arguments about *DDR Holdings*.

GTL's failure to discuss the claims conceals the fact that they do not require any action by a telecommunications system. Instead, they require comparing *information* about a communication to stored *information* about security-threat groups or employees to identify threat-group activity or inmate-employee fraternization. The patents make that clear by expressly stating that the invention can be implemented on a general-purpose computer. Appendix, Ex. A at 11:4–7 [App. 14], Ex. B at 9:24–27 [App. 29]. Thus, the patents belie GTL's unsupported assertion that the claims are "necessarily rooted" in "telecommunications system technology."

GTL's analysis of *TQP* fails for the same reason. GTL's partial quote from *TQP* suggests, inaccurately, that the relevant inquiry is the subject of the *patent*, whereas Judge Bryson explicitly stated that the patent *claims* must be analyzed. GTL states: "The patent in *TQP*

'involve[d] a method for changing data in a way that will affect the communication system itself, making it more secure.'" Response, at 14–15 (quoting *TQP*, 2014 WL 651935, at *7). The *TQP* court actually held: "The disputed **claim** does not involve a method of doing business that happens to be implemented on a computer; instead, it ***involves a method for changing data in a way that will affect the communication system itself, by making it more secure***." 2014 WL 651935, at *7 (emphasis added).

As with *DDR Holdings*, GTL fails to point to any claims of the '359 or '171 patents in discussing *TQP*. Securus showed that the claims can either be performed by the human mind using paper files or by using generic computer components to automate an abstract idea. GTL's conclusory arguments, without citing the claims, do not come close to rebutting that showing.

**F.    The '359 and '171 patent claims simply involve the comparison of a piece of information to stored information and taking some action if there is a match.**

GTL argues that its patents are not like *Alice* where the methods were admittedly performed without a computer before the filing of the patent. Response, at 16. Once again, GTL ignores the claim language. The claims in GTL's patents require nothing more than comparing a piece of information (such as a call data record) to stored information (such as a listing of names and phone numbers) and taking action if they match. GTL does not dispute that such comparative analysis has long been used in various situations, including restaurant reservations, secure-facility access, and license-plate checking. Simply applying a well-known technique to a particular field does not transform an abstract idea into patent eligibility. *Alice*, 134 S. Ct. at 2358; *Cogent Medical, Inc. v. Elsevier Inc.*, 70 F. Supp. 3d 1058, 1065 (N.D. Cal. 2014) (specific application to medical field does not render claims patent eligible).

GTL argues that the dependent claims provide sufficient detail to make those claims patentable. Response, at 18. GTL makes this statement without reference to particular claim limitations, and as such, this argument must be rejected. Securus identified all of the elements of the asserted dependent claims to demonstrate that, like the independent claims, they recite only

generic components or provide examples of the abstract idea. Motion, at 14–17. Thus, the dependent claims are also not patent eligible. *See, e.g.*, *Wolf v. Capstone Photography, Inc.*, No. 2:13-CV-09573, 2014 WL 7639820, at *12 (C.D. Cal. Oct. 28, 2014) (rejecting argument that dependent claims were patentable where dependent claims merely "list several ways of identifying event participants" and "recite generic technological categories"); *see also Intellectual Ventures I LLC v. Mfgs. & Traders Trust Co.*, 76 F. Supp. 3d 536, 552 (D. Del. 2014).

**G. This Court may decide patent eligibility on the pleadings.**

As a last-ditch argument, GTL contends that factual issues preclude judgment on the pleadings. This is incorrect, as this Court recently explained:

> A motion for judgment on the pleadings under Rule 12(c) should be granted if the complaint lacks a cognizable legal theory. *Doe v. My Space, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). Patent subject matter eligibility under 35 U.S.C. 101 is a question of law suitable for resolution at the pleading stage of patent litigation matter. *Content Extraction and Transmission LLC v. Wells Fargo Bank, NA*, ⸺ F.3d ⸺, 2014 WL 7272219 (Fed. Cir. Dec. 23, 2014).

*Jericho Sys. Corp. v. Axiomatics, Inc.*, No. 3:14–CV–2281–K, 2015 WL 2165931, at *1 (N.D. Tex. May 7, 2015); *see also* Motion, at 8–9 (citing cases). GTL does not address this Court's analysis in *Jericho Systems* or the Federal Circuit cases cited in Securus' Motion.

Instead, GTL points to a couple of district-court cases where the courts were reluctant to resolve the issue at the pleading stage. But unlike the cases GTL relies on where the courts found factual issues precluding adjudication at the pleadings stage, here the Court has already construed the claims of the '359 and '171 patent. *See Markman* Order [ECF No. 134]. Thus, there is no dispute — factual or otherwise — as to the scope of the claims. Because the *claims* are what matter in the Section 101 context, judgment on the pleadings is appropriate.

For the reasons stated, Plaintiff Securus Technologies, Inc. respectfully requests the Court to grant the Motion enter judgment that the '359 and '171 patents are invalid.

Respectfully submitted,

*/s/ Richard L. Wynne, Jr.*
Richard A. Sayles
(Lead Counsel)
  Texas State Bar No. 17697500
  dsayles@swtriallaw.com
Mark D. Strachan
  Texas State Bar No. 19351500
  mstrachan@swtriallaw.com
E. Sawyer Neely
  Texas State Bar No. 24041574
  sneely@swtriallaw.com
Darren P. Nicholson
  Texas State Bar No. 24032789
  dnicholson@swtriallaw.com

SAYLES | WERBNER, P.C.
1201 Elm Street, Suite 4400
Dallas, Texas 75270
214.939.8700 – Telephone
214.939.8787 – Facsimile

Bruce S. Sostek
  Texas State Bar No. 18855700
  bruce.sostek@tklaw.com
Richard L. Wynne, Jr.
  Texas State Bar No. 24003214
  richard.wynne@tklaw.com

THOMPSON & KNIGHT LLP
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, Texas 75201
214.969.1700 – Telephone
214.969.1751 – Facsimile

        G. Michael Gruber
          Texas Bar No. 08555400
          mgruber@ghetrial.com
        Anthony J. Magee
          Texas Bar No. 00786081
          amagee@ghetrial.com
        Robert E. Weitzel
          Texas Bar No. 24070823
          rweitzel@ghetrial.com

        GRUBER HURST ELROD JOHANSEN
          HAIL SHANK LLP
        Fountain Place
        1445 Ross Avenue, Suite 2500
        Dallas, Texas 75202
        214.855.6800 – Telephone
        214.855.6808 – Facsimile

        ATTORNEYS FOR PLAINTIFF/COUNTERCLAIM-
        DEFENDANT SECURUS TECHNOLOGIES, INC.

## CERTIFICATE OF SERVICE

    I certify that on August 26, 2015, I caused a true and correct copy of the foregoing to be served via ECF on all counsel of record.

        */s/ Richard L. Wynne, Jr.*
        Richard L. Wynne, Jr.