**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

SECURUS TECHNOLOGIES, INC.,

    Plaintiff,

v.

GLOBAL TEL*LINK CORPORATION,

    Defendant.

CIVIL ACTION NO. 3:13-cv-03009-K

(JURY DEMANDED)

**GLOBAL TEL*LINK'S BRIEF IN OPPOSITION TO**
**SECURUS'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
**ON GLOBAL TEL*LINK'S BREACH OF CONTRACT COUNTERCLAIM**

## TABLE OF CONTENTS

INTRODUCTION AND SUMMARY ................................................................................... 1

COUNTERSTATEMENT OF UNDISPUTED MATERIAL FACTS ......................................... 3

ARGUMENT AND AUTHORITIES................................................................................... 5

   I.   GTL Provided Its Damages Model to Securus .................................................... 5

   II.  GTL Does Not Need an Expert To Establish Its Actual Damages from
       Securus's Breach of the Covenant Not To Sue................................................. 12

CONCLUSION........................................................................................................... 16

# TABLE OF AUTHORITIES

Page

**CASES**

*15625 Ft. Bend Ltd. v. Sentry Select Ins. Co.*, 991 F. Supp. 2d 932 (S.D. Tex. 2014)..................13

*Auto Indus. Supplier Emp. Stock Ownership Plan v. Ford Motor Co.*, 435 F. App'x 430 (6th Cir. 2011)..........................................................................................................15

*Baker v. Canadian Nat'l/Ill. Cent. R.R.*, 536 F.3d 357 (5th Cir. 2008) ...........................................11

*Baxter v. Crown Petroleum Partners 90-A*, No. 3:97-CV-2371-P, 2000 WL 269747 (N.D. Tex. Mar. 10, 2000) .............................................................................................15

*Brandon v. Sage Corp.*, No. 5:12-CV-1118-DAE, 2014 WL 1092078 (W.D. Tex. Mar. 18, 2014).........................................................................................................14

*Bright & Co. v. Holbein Family Mineral Trust*, 995 S.W.2d 742 (Tex. App.—San Antonio 1999, rev. denied) ..............................................................................................15

*CQ, Inc. v. TXU Mining Co.*, 565 F.3d 268 (5th Cir. 2009) ..........................................................15

*Cambridge Strategies, LLC v. Cook*, No. 3:10-CV-2167-L, 2012 WL 176587 (N.D. Tex. Jan. 23, 2012)..............................................................................................14

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...............................................................................5

*DP Sols., Inc. v. Rollins, Inc.*, 353 F.3d 421 (5th Cir. 2003) ................................................... 14-15

*Dall. Gas Partners, LP v. Prospect Energy Corp.*, No. G-04-669, 2007 WL 1466833 (S.D. Tex. May 16, 2007) .............................................................................................10

*E.F. Hutton & Co. v. Youngblood*, 741 S.W.2d 363 (Tex. 1987)...................................................13

*Ganske v. WRS Grp., Inc.*, No. 10-06-00050-CV, 2007 WL 1147357 (Tex. App.—Waco Apr. 18, 2007)................................................................................................10

*Gill Sav. Ass'n v. Chair King, Inc.*, 797 S.W.2d 31 (Tex. 1990)....................................................14

*Hancock v. Chi. Title Ins. Co.*, Nos. 3:07-CV-1441-D, 3:08-CV-1916-D, 2013 WL 2391500 (N.D. Tex. June 3, 2013)...........................................................................14

*Kondos v. Allstate Tex. Lloyds*, No. Civ.A. 1:03-CV-1440, 2005 WL 1004720 (E.D. Tex. Apr. 25, 2005) .............................................................................................14

*Lee v. Perez*, 120 S.W.3d 463 (Tex. App.—Houston 2003)...........................................................15

*Lesikar v. Rappeport*, 33 S.W.3d 282 (Tex. App.—Texarkana 2000, pet. denied).......................13

*Mead v. Johnson Grp., Inc.*, 615 S.W.2d 685 (Tex. 1981)......................................................6, 12, 13

*MicroStrategy Inc. v. Bus. Objects, S.A.*, 429 F.3d 1344 (Fed. Cir. 2005)....................................16

*Nieto v. Kapoor*, 182 F. Supp. 2d 1114 (D.N.M. 2000) ................................................................11

*Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546 (5th Cir. 2004)..............................11

*Santiago-Diaz v. Laboratoria Clinico y de Referencia Del Este & Sara Lopez, M.D.*,
     456 F.3d 272 (1st Cir. 2006) ................................................................................................16

*TUA, Inc. v. Weeks*, No. 09-98-293CV, 1998 WL 880866 (Tex. App.—Beaumont
     1998, rev. denied) ................................................................................................................15

*Tex. A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394 (5th Cir. 2003).......2, 8, 10, 11

*Twin City Fire Ins. Co. v. Vega-Garcia*, 223 S.W.3d 762 (Tex. App.—Dallas 2007,
     rev. denied) ..........................................................................................................................13

*United States v. Diebold, Inc.*, 369 U.S. 654 (1962)......................................................................5

*Widener v. Arco Oil & Gas Co.*, 717 F. Supp. 1211 (N.D. Tex. 1989)..........................................9

*Woollett v. Matyastik*, 23 S.W.3d 48 (Tex. App.—Austin 2000, pet. denied) ..............................13

*Wright v. Blythe-Nelson, No. CIVA399CV2522D*, 2001 WL 804529 (N.D. Tex.
     July 10, 2001)........................................................................................................................14

**RULES**

Fed. R. Civ. P. 26................................................................................................................10, 16

Fed. R. Civ. P. 26(a) ...............................................................................................................2, 3

Fed. R. Civ. P. 26(a)(1)..............................................................................................................11

Fed. R. Civ. P. 26(a)(1)(C).........................................................................................................11

Fed. R. Civ. P. 26(a)(2)................................................................................................................3

Fed. R. Civ. P. 26(a)(3)..............................................................................................................11

Fed. R. Civ. P. 26(e) ....................................................................................................................6

Fed. R. Civ. P. 26(e)(1)..............................................................................................2

Fed. R. Civ. P. 26(e)(1)(A) ....................................................................................1, 7

Fed. R. Civ. P. 30(b)(6)......................................................................................2, 6, 8, 9

Fed. R. Civ. P. 37.................................................................................................6, 10

Fed. R. Civ. P. 37(c) ................................................................................................6

Fed. R. Civ. P. 37(c)(1)........................................................................................2, 7

Fed. R. Civ. P. 56(a) ................................................................................................5

Fed. R. Evid. 702 ..................................................................................................12

Tex. Civ. Prac. & Rem. Code Ann. § 38.001 ......................................................14, 15

Tex. Civ. Prac. & Rem. Code Ann. § 38.004 ......................................................14, 15

## OTHER MATERIALS

Alan Wright & Arthur R. Miller, *Federal Practice & Procedure Civ.* (3d ed. 2015)....................7

Fed. R. Civ. P. 26 advisory committee's note (1993 Amendment, Subdivision (e)) .....................7

## INTRODUCTION AND SUMMARY

Securus Technologies, Inc. ("Securus") has moved for summary judgment on Global Tel*Link Corporation's ("GTL") breach-of-contract counterclaim because GTL did not supplement its initial disclosures and one interrogatory response before the close of discovery and chose not to serve an expert report on damages.  But nothing requires GTL to proffer expert opinions in support of straightforward consequential damages, and GTL was under no obligation to supplement its disclosures where, as here, additional information had "otherwise been made known [to Securus] during the discovery process."  Fed. R. Civ. P. 26(e)(1)(A).  Securus's opening brief confirms that GTL produced evidence on the amount of damages before the close of discovery and that Securus understood that evidence.  In any event, Securus did not and cannot show harm from a lack of supplementation.

GTL's contract claim arose when Securus filed suit against GTL in August 2013 in violation of a covenant not to sue.  This Court has already found that the covenant contained in an agreement between Securus and a GTL affiliate barred Securus's claims.  Dkt. No. 80 (granting summary judgment against Securus); Dkt. No. 108 (denying Securus's motion for reconsideration).

Securus admits that it knows (and has known) that GTL is seeking its attorneys' fees as damages for the breach.  Br. at 5, 6 (noting "one can surmise that GTL may be seeking attorney fees, or some portion of its fees, as damages for breach of contract" and citing GTL's Third Am. Counterclaims).  Securus also admits that, as evidence of its damages, GTL produced "attorney fee statements," specifically the invoices from two law firms that assisted in GTL's defense.  *Id.* at 6.  Securus also acknowledges that, in transmitting those invoices, counsel for GTL explained that redactions and deductions were made on invoices, so that the amounts shown on the

statements reflect work performed only on Securus's improper claims and not work performed on GTL's counterclaims.  *Id.*

Still, Securus complains that the invoices fail to explain "what was redacted, what was deducted, and what remains, and further, what connection these invoices have to the amount and method of calculating GTL's alleged damages for breach of contract."  *Id.  But Securus chose not to ask those questions.*  The documents were produced before discovery closed and before Securus had taken a single deposition in this case.  Indeed, although Securus noticed a 30(b)(6) deposition on "the factual basis for [GTL's] breach of contract counterclaim," and GTL produced a corporate designee prepared to testify about damages associated with that claim, *Securus elected not to ask a single question on that subject*.  Nor did Securus ever request a more complete interrogatory response.

Instead, Securus chose to raise the issue for the first time in this motion for judgment on GTL's counterclaim.  But even if supplementation were required (and under Rule 26(e)(1), it is not required), the potential relief for a party's failure to supplement disclosures is *not* an adverse judgment; rather, as the authority cited by Securus makes clear, if a party fails to provide required information, the court may find that the party "is not allowed to use that information" at trial, "unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1); *Tex. A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 401-02 (5th Cir. 2003).  Securus cannot show the requisite harm.  No harm came from GTL's failure to specify in Rule 26(a) disclosures what Securus already knew:  that the attorney invoices were evidence of damages.  But to eliminate the issue entirely, GTL has already supplemented its disclosures and did so within three weeks of the close of discovery.

As for an expert report, GTL has no intention of offering expert testimony on damages at trial and therefore was under no obligation to serve an expert report. Fed. R. Civ. P. 26(a)(2). Expert testimony is not required for a jury to understand that GTL's invoices were incurred as a direct and foreseeable result of Securus's breach. GTL's "damages model" is simple arithmetic.

Because Securus's only basis for summary judgment is that GTL has not produced any evidence of damages—a claim that is plainly false—Securus's motion should be denied. The Court should reject Securus's attempt to avoid liability for its contractual breach.

## COUNTERSTATEMENT OF UNDISPUTED MATERIAL FACTS

Securus initiated this suit in 2013 by asserting claims against GTL for patent infringement. (Dkt. No. 1). In July 2014, the Court found that Securus's suit violated a covenant not to sue and dismissed all of Securus's claims from this case. (Dkt. No. 80; Dkt. No. 108). GTL's breach-of-contract counterclaim seeks to recover its damages for Securus's breach of the covenant. Specifically, GTL seeks to recover actual damages (i.e., outside attorneys' fees, costs, and other expenses) incurred in defending against Securus's improper suit. (Dkt. No. 119, at 12). GTL filed counterclaims for patent infringement as well as for breach of contract. (Dkt. No. 119). GTL has *not* sought to recover as damages the legal fees it has incurred prosecuting any of its counterclaims, including the fees incurred prosecuting its breach-of-contract counterclaim.

On December 13, 2013, GTL served its amended initial disclosures under Rule 26(a). (Securus App. 13).[1] In its initial disclosures, GTL stated that it had not yet prepared a computation of damages for its patent-infringement and breach-of-contract counterclaims. Indeed at that time, before Securus's claims were dismissed, the damages resulting from Securus's breach continued to accrue. On September 8, 2014, GTL answered Securus's

---

[1] The "Securus App." citations refer to the Appendix to Securus's opening brief. (Dkt. No. 183-1). The "App." citations refer to the Appendix to this brief.

interrogatory number 17, which asked GTL to "[p]rovide a complete computation of each category of damages that you claim to have suffered as a result of Securus's alleged breach of the 2009 PCS Settlement Agreement, and identify all Documents, ESI, things, and other materials bearing on the nature and extent of your alleged damages."  (Securus App. 24).  GTL answered that it would respond to Securus's interrogatory number 17 with "expert opinion and testimony, consistent with the deadlines for the designation of experts set forth in the Court's scheduling order."  (Securus App. 25).  GTL also stated that its investigation of its damages was ongoing and that it "reserves the right to supplement its response to [the] Interrogatory to identify responsive information as discovery progresses."  *Id.*  At the time, GTL anticipated that it would include the damages associated with the breach of contract with the expert disclosures on damages from the patent counterclaims.  Ultimately GTL elected not to seek damages on its patent claims, eliminating the need for an expert report on damages.

On April 8, 2015—the date set for the parties to designate experts—GTL did not designate a damages expert and instead produced redacted invoices from its principal law firm in this matter, Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C. ("Kellogg Huber").  (Securus App. 27).  In the correspondence accompanying those invoices, counsel for GTL explained that it was producing two sets of Kellogg Huber invoices.  GTL's counsel explained that the first set of invoices was the "original bills," while the second set "reflects the original bills except that we have deducted time (and redacted the bills) to remove work done on GTL's" counterclaims.[2]  *Id.*  On July 28, 2015, GTL produced a corresponding series of invoices from

---

[2] *See also* GTL's Supplemental Responses to Plaintiff's Second Set of Interrogatories (Nos. 5-17) at 7-8 (App. 2-3) ("As explained in correspondence transmitted with those documents, the invoices reflect reductions for attorney time spent working on GTL's counterclaims, including GTL's breach of contract counterclaim, so that the remaining amounts reflect work only on GTL's defense of the improper claims brought by Securus.").

**GTL'S OPPOSITION TO SECURUS'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**                                    4

the law firm of Sterne, Kessler, Goldstein & Fox, P.L.L.C. ("Sterne Kessler"), which likewise reflect deductions for work performed on GTL's counterclaims and work related to Inter Partes Review ("IPR") proceedings in the U.S. Patent Office.  (Securus App. 28).[3]  Along with the Kellogg Huber invoices, GTL also produced a spreadsheet that displays the total amount of each monthly invoice attributable to attorney time spent on GTL's defense.  (App. 7-22).

Thus, Securus's assertion that GTL has not disclosed a "damages model" is wrong.  The Kellogg Huber and Sterne Kessler invoices show the full extent of the damages that GTL seeks for Securus's breach of contract, and both sets of invoices were produced before the discovery deadline and before Securus had taken a single deposition in this case.  And even though the total legal fees associated with GTL's defense can be computed from the invoices with simple arithmetic, GTL supplemented its response to interrogatory number 17 on August 26, 2015, in part to reflect the total amount invoiced by both law firms for GTL's defense against Securus's improper suit.

## ARGUMENT AND AUTHORITIES

For summary judgment, Securus bears the burden of demonstrating that there are no genuine disputed issues of material fact.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The Court must construe the evidence in the light most favorable to GTL. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

**I.      GTL Provided Its Damages Model to Securus**

**1.**  As damages for Securus's breach of the covenant not to sue, GTL is seeking to recover the attorneys' fees and expenses that it incurred in defending against the patent-infringement suit Securus brought in violation of the covenant, plus pre- and post-judgment

---

[3] *See also* GTL's Supplemental Responses to Plaintiff's Second Set of Interrogatories (Nos. 5-17) at 7-8 (App. 2-3).

interest as the Court deems appropriate.  Those legal fees and expenses are the "natural, probable, and foreseeable consequence of" Securus's breach.  *See Mead v. Johnson Grp., Inc.*, 615 S.W.2d 685, 687 (Tex. 1981) ("In an action for breach of contract, actual damages may be recovered when loss is the natural, probable, and foreseeable consequence of the defendant's conduct.").  GTL produced the invoices along with reductions for attorney time spent on GTL's counterclaims and IPRs and provided an explanation of the reductions in the letters that accompanied the invoice productions.  (Securus App. 27-29).  GTL produced that evidence well in advance of the discovery deadline and before Securus had taken a single deposition in this case.  In addition, on August 12, 2015, GTL produced a corporate designee who was prepared to testify about "[t]he factual basis for [its] breach of contract counterclaim,"[4] as Securus had requested.  (App. 30).  Securus's counsel did not ask a single question about the invoices or GTL's damages during that Rule 30(b)(6) deposition.  Nor did Securus seek to depose GTL's counsel or anyone else regarding the invoices.

GTL's invoices are evidence of damages that were a foreseeable result of Securus's lawsuit.  Because Securus's only basis for summary judgment is that GTL has not produced any evidence of damages—which it plainly has—Securus's motion should be denied.

**2.**  Securus asserts (at 5-6) that Rule 37 demands that GTL cannot use its law-firm invoices because GTL allegedly failed to provide the information "as required by Rule 26(a) or (e)."  *See* Fed. R. Civ. P. 37(c).  Because GTL could not have known its legal fees at the outset of this case, Securus's argument must be that GTL violated its duty to supplement its discovery responses under Rule 26(e).  That rule, however, provides that discovery responses must be supplemented "if the party learns that in some material respect the disclosure or response is

---

[4] Securus acknowledges (at 5) that damages are an element of a breach-of-contract claim under Texas law.

incomplete or incorrect, *and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.*"  Fed. R. Civ. P. 26(e)(1)(A) (emphasis added).  Therefore, GTL was under no obligation to supplement its initial disclosures or its interrogatory response, because the information about GTL's damages was otherwise "made known to [Securus] during the discovery process or in writing."  *Id.; see also* 8A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure Civ.* § 2049.1 (3d ed. 2015) ("[T]here is no need as a matter of form to submit a supplemental disclosure to include information already revealed . . . through formal discovery.); Fed. R. Civ. P. 26 advisory committee's note (1993 Amendment, Subdivision (e)) ("There is . . . no obligation to provide supplemental or corrective information that has been otherwise made known to the parties in writing or during the discovery process . . . .").

Nonetheless, for the avoidance of doubt, GTL supplemented its response to interrogatory number 17 on August 26, 2015—less than three weeks after the close of discovery and more than five months before the scheduled trial date.  (App. 2-3).  GTL's interrogatory response now explicitly references its law-firm invoices (which had already been provided to Securus before the close of discovery) and provides the total invoiced from each firm for the defense against Securus's improper suit (which is the result of applying simple arithmetic to the invoices).

In any event, even assuming that GTL was obliged to supplement its initial disclosures or answer to interrogatory number 17 sooner—which it was not—the failure to do so was, at most, harmless error.  *See* Fed. R. Civ. P. 37(c)(1) (failure to provide timely discovery does not preclude admission of evidence at trial if the failure was "substantially justified or is harmless").  GTL produced its law-firm invoices before the close of discovery and before Securus had taken a single deposition in this case.  The vast majority of those invoices (by dollar value) were

produced on April 8, 2015, giving Securus ample time to seek further discovery related to the invoices before discovery closed on August 6, 2015.  Securus, however, sought no further discovery related to GTL's law-firm invoices.  And even though its Rule 30(b)(6) deposition notice indicated that GTL's corporate designee should be prepared to answer questions about the "[t]he factual basis for [GTL's] breach of contract counterclaim," Securus's counsel did not ask a single question about the invoices specifically or breach-of-contract damages generally.

The lack of prejudice to Securus is apparent in Securus's brief.  Securus does not even attempt to apply the Fifth Circuit's test for whether a failure to disclose discovery information is harmless.  *See Tex. A&M*, 338 F.3d at 402 (setting forth four factors used "[i]n evaluating whether a violation of Rule 26 is harmless").  Application of that test reveals the absurdity of Securus's attempt to exclude GTL's damages evidence: (1) the evidence is important because it is essential to GTL's recovery of expenses incurred as a direct result of Securus's breach; (2) Securus cannot claim prejudice because GTL produced the evidence well in advance of the close of discovery; (3) because there is no prejudice, there is no need to cure prejudice with a continuance; and (4) GTL did not fail to disclose anything—it did disclose the information that Securus now seeks to exclude.

Securus's only allegation of prejudice (at 8) is a conclusory statement that "a late calculation" of damages—meaning summing the total of the already produced invoices—"would prejudice Securus' ability to judge its monetary exposure and marshal resources accordingly." But Securus offers nothing to support the implausible claim that it had no idea of its exposure.

Securus's feigned ignorance—that it did not know "what was redacted [from the invoices], what was deducted, and what remains, and further, what connection these invoices have to the amount and method of calculating GTL's alleged damages for breach of contract"—

is also unconvincing.  Br. at 6.  The letters accompanying GTL's production of law-firm invoices described what was redacted (privileged and confidential information and information related to GTL's counterclaims), what was deducted (work done on GTL's counterclaims), such that what remained was clearly work related to defending GTL against Securus's claims.  *See* Letters Accompanying Productions (Securus App. 27-29).  Securus's assertion (at 6) that GTL produced its law-firm invoices "without comment or explanation" is therefore demonstrably false.  Nor does Securus point to a rule of discovery that required GTL to comment on or explain its invoices to Securus.  If Securus had questions about GTL's invoices, it could have sought further discovery, asked about the invoices during the Rule 30(b)(6) deposition, or taken GTL's counsel up on their offer in the letters accompanying the invoice productions: "If you have any questions, please do not hesitate to contact us."  *Id.*  (Securus App. 27, 29).  Instead, Securus chose to do nothing, apparently lying in wait to file this motion.  Accordingly, Securus's supposed inability to understand GTL's law-firm invoices is its own fault—not GTL's.

Securus also cannot complain that it was ignorant of "any persons with knowledge of any alleged damages" (at 1) when it had a corporate designee in the deposition seat, prepared to testify in accordance with Securus's 30(b)(6) notice, about those damages.  And, the invoices themselves contain the names of the attorneys who performed the work and the GTL employee who received the bills.

It is no surprise that Securus "surmised" (at 5) that GTL is seeking its attorneys' fees and expenses as damages for Securus's breach.  Legal expenses incurred defending a suit brought in violation of a covenant not to sue are widely recognized as consequential damages for such a breach.  *See Widener v. Arco Oil & Gas Co.*, 717 F. Supp. 1211, 1217 (N.D. Tex. 1989) ("Because the purpose of entering into a release is to avoid litigation, the damages a releasor

suffers when the release is breached are its costs and attorneys' fees incurred in defending against the wrongfully brought action."); *Dall. Gas Partners, LP v. Prospect Energy Corp.*, No. G-04-669, 2007 WL 1466833, at *2 (S.D. Tex. May 16, 2007) ("[A] 'release is a contract' and a successful counterclaim for breach of a contract not to sue entitles the prevailing party to the recovery of attorney's fees incurred in defense of the offending suit.") (citation omitted); *Ganske v. WRS Grp., Inc.*, No. 10-06-00050-CV, 2007 WL 1147357, at *3 (Tex. App.—Waco Apr. 18, 2007) ("An action to enforce a settlement agreement is a contractual dispute and is governed by the rules relating to a binding contract. . . . Therefore, the [plaintiffs] need rely on only the law of contracts to recover prior attorney's fees as direct damages under the terms of the settlement agreement."). Moreover, GTL's damages calculation is conservative. GTL has *not* included expenses incurred in prosecuting any of its counterclaims, including the breach-of-contract counterclaim. For Securus's breach of the covenant not to sue, GTL seeks to recover only the legal fees incurred defending against Securus's improperly filed claims of patent infringement.

Courts have rejected attempts to exclude evidence under Rule 37 in situations where the underlying violation of Rule 26 was considerably more severe than the putative violation alleged by Securus. In *Texas A&M*, for example, the trial court found the defendants liable for breach of contract, but that the plaintiff "had failed to offer any evidence of damages." 338 F.3d at 399. The trial court reopened the record *after* trial to allow the plaintiff to submit evidence of "expenses actually incurred" due to the defendants' breach, such as invoices showing expenses incurred by the plaintiff. *Id.* at 401-02. The Fifth Circuit found that the defendants were "not unfairly surprised by the [new] evidence" because "defendants never have argued that [the] expenses were not incurred" and the evidence "did not directly relate to [defendants'] principal arguments against recovery." *Id.* at 401. Furthermore, "the witness in support of whose

testimony the invoices were offered had been designated properly as a witness before trial" and "any prejudice was cured by the approximately one month during which [the defendant] was allowed to examine and respond to the contested evidence." *Id.* at 402.

Here, as in *Texas A&M*, Securus has not argued that GTL's defensive litigation expenses were not incurred. Moreover, pretrial witness disclosures under Rule 26(a)(3) have not yet occurred. And in any event, GTL expects to introduce its law-firm invoices at trial through one of the GTL witnesses identified in its Rule 26(a)(1) initial disclosures. *See* Amended Initial Disclosures, Ex. A. (Securus App. 17-18). Furthermore, any prejudice was cured by the ample time Securus had to "examine and respond" to GTL's invoices. Unlike in *Texas A&M*, those invoices were produced *during* the discovery period and therefore with ample time for Securus to seek further discovery on the topic of GTL's damages. And for the avoidance of doubt, GTL supplemented its response to interrogatory number 17 less than three weeks after discovery closed—long before trial. *See also Baker v. Canadian Nat'l/Ill. Cent. R.R.*, 536 F.3d 357 (5th Cir. 2008) (affirming the allowance of evidence disclosed after the discovery deadline in a supplemental interrogatory response provided months before trial); *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 563-64 (5th Cir. 2004) (plaintiffs' failure to provide a written expert report to defendant insurance company who refused to provide a defense to plaintiff was harmless where "[p]laintiffs also provided [defendant] with a copy of the bills" from the law firms); *Nieto v. Kapoor*, 182 F. Supp. 2d 1114, 1147 (D.N.M. 2000) (plaintiffs failure to disclose damages calculations under Rule 26(a)(1)(C) did not prejudice defendants who were provided with significant damages information and who failed to ask questions about damages during the deposition of the plaintiff).

## II.   GTL Does Not Need an Expert To Establish Its Actual Damages from Securus's Breach of the Covenant Not To Sue

**1.**  Expert testimony is not required for the jury to understand GTL's damages from Securus's breach of the covenant not to sue, namely, the attorneys' fees and expenses it incurred defending against Securus's improper lawsuit, as detailed on the law-firm invoices.  *See* Fed. R. Evid. 702.

GTL has limited the damages it seeks to the fees and expenses incurred in defending against Securus's improper suit.  It is not seeking to recover amounts expended prosecuting its patent-infringement counterclaims or its breach-of-contract counterclaim, even though both such counterclaims are arguably the "natural, probable, and foreseeable consequence," *Mead*, 615 S.W.2d at 687, of filing a patent-infringement suit against a competitor in violation of a covenant not to sue.  Nor is GTL seeking to recover damages for time spent on this case by non-attorney executives at GTL or its in-house counsel.  GTL is also not seeking to recover for any harm to its competitive position that may have occurred as a result of Securus's improper suit.

The invoices GTL produced indicate reductions for attorney time and expenses incurred prosecuting GTL's counterclaims.  (App. 7-22)  Accordingly, the calculation of the total amount of damages that GTL seeks requires only the application of simple arithmetic to the invoices.  To the extent the law requires GTL to perform that arithmetic for Securus, GTL has provided Securus with the total amount invoiced from each law firm for GTL's defense in its supplemental response to Securus's interrogatory number 17.  (App. 2-3)  GTL's evidence is sufficient to establish its damages at trial.

**2.**  Securus asserts (at 6-7) that expert testimony is required for GTL to recover its attorney fees in defending against Securus's improper suit.  Securus is wrong.  GTL is not seeking attorney fees in the sense typically foreclosed by the American Rule (i.e., the rule that

each party to a lawsuit normally bears its own attorneys' fees). Instead, GTL is seeking its actual

damages for Securus's breach of a covenant not to sue. In Texas breach-of-contract cases,

damages include expenses that are the "natural, probable, and foreseeable consequence" of the

breach. *Mead*, 615 S.W.2d at 687. Securus does not address that standard in its brief. It instead

cites cases (at 6-7) where some lower Texas courts have required expert testimony to establish

the attorneys' fees that were "reasonable and necessary" to litigate an action and that were

allowed as a statutory or equitable exception to the American Rule. *See Twin City Fire Ins. Co.

v. Vega-Garcia*, 223 S.W.3d 762, 765-66 (Tex. App.—Dallas 2007, rev. denied) ("reasonable

and necessary" fees under Texas Labor Code); *Woollett v. Matyastik*, 23 S.W.3d 48, 50, 52 (Tex.

App.—Austin 2000, pet. denied) ("necessary and reasonable" guardianship expenses under

Texas Probate Code); *Lesikar v. Rappeport*, 33 S.W.3d 282, 306 (Tex. App.—Texarkana 2000,

pet. denied) ("reasonable and necessary" fees on equitable grounds for wrongful breach of

fiduciary duties causing plaintiff to incur fees "in prior litigation with a third party"); *E.F. Hutton

& Co. v. Youngblood*, 741 S.W.2d 363, 364 (Tex. 1987) (per curiam) ("reasonable and

necessary" fees under the Texas Deceptive Trade Practices Act).[5] None of the Texas cases cited

by Securus dealt with a party seeking to recover attorneys' fees as actual damages for a breach of

a covenant not to sue. Nor is there any legal principal that requires consequential damages for a

contract breach to be "reasonable and necessary," whether those damages come in the form of

attorneys' fees or otherwise.

Instead, Federal courts in Texas, applying the Federal Rules of Civil Procedure and the

Federal Rules of Evidence, have frequently found that expert disclosures are not required to

---

[5] In *15625 Ft. Bend Ltd. v. Sentry Select Insurance Co.*, 991 F. Supp. 2d 932, 946 (S.D. Tex.
2014)—which is also cited by Securus—the court stated that "[f]or a party to recover attorney's
fees it must produce supporting expert testimony." The court, however, relied on the same Texas
cases cited by Securus for that overly broad and therefore incorrect statement of Texas law.

establish attorneys' fees—even in situations where only reasonable and necessary fees are allowed as an exception to the American Rule. *See, e.g., Cambridge Strategies, LLC v. Cook*, No. 3:10-CV-2167-L, 2012 WL 176587, at *8 (N.D. Tex. Jan. 23, 2012) ("[A]ttorneys testifying solely on the topic of attorney's fees are not generally required to provide expert reports . . . ."); *Brandon v. Sage Corp.*, No. 5:12-CV-1118-DAE, 2014 WL 1092078, at *4-5 (W.D. Tex. Mar. 18, 2014) (same); *Kondos v. Allstate Tex. Lloyds*, No. Civ.A. 1:03-CV-1440, 2005 WL 1004720, at *18 (E.D. Tex. Apr. 25, 2005) (same); *Wright v. Blythe-Nelson*, No. CIVA399CV2522D, 2001 WL 804529, at *6 (N.D. Tex. July 10, 2001) (Fitzwater, J.) ("This court has typically treated the designation of attorney's fees experts differently from other experts. . . .  Attorneys who represent parties against whom such fees are sought are not surprised by expert testimony because they can usually expect that opposing counsel will attempt to prove his attorney's fees and because they are themselves experts on the subject."); *Hancock v. Chi. Title Ins. Co.*, Nos. 3:07-CV-1441-D, 3:08-CV-1916-D, 2013 WL 2391500, at *5 (N.D. Tex. June 3, 2013) (same).

Nor, contrary to Securus's assertions, is there any settled requirement under Texas law that expert testimony is required to establish attorney fees.  Texas allows a party who prevails in a breach of contract action to recover its attorneys' fees in that action (i.e., as a statutory exception to the American Rule).  Tex. Civ. Prac. & Rem. Code Ann. § 38.001.  Even in that situation, the Texas Code does not require expert testimony to establish those fees, but instead allows a court to "take judicial notice of the usual and customary attorney's fees and of the contents of the case file without receiving further evidence."  *Id.* § 38.004; *see also Gill Sav. Ass'n v. Chair King, Inc.*, 797 S.W.2d 31, 32 (Tex. 1990) (per curiam) ("The trial court's own proceedings together with the fact that it may take judicial notice of usual and customary fees" were sufficient to support an award of attorneys' fees); *DP Sols., Inc. v. Rollins, Inc.*, 353 F.3d

421, 433-34 (5th Cir. 2003) (affirming award of attorneys' fees where district court "received all of the billing records" and applied its judgment "to reflect the levels the court found reasonable in light of [counsels'] representation . . . at trial"); *Baxter v. Crown Petroleum Partners 90-A*, No. 3:97-CV-2371-P, 2000 WL 269747, at *7 (N.D. Tex. Mar. 10, 2000) (rejecting argument that there was no expert testimony to support award of attorneys' fees because "the Court may take judicial notice of what a reasonable attorney fee should be"); *Lee v. Perez*, 120 S.W.3d 463, 469 (Tex. App.—Houston 2003) (expert testimony on attorneys' fees was "neither necessary nor conclusive" in light of § 38.004); *Bright & Co. v. Holbein Family Mineral Trust*, 995 S.W.2d 742, 747-48 (Tex. App.—San Antonio 1999, rev. denied) ("In awarding attorney's fees, a court may take judicial notice of the usual and customary attorney's fees in a proceeding before the court without receiving evidence."); *TUA, Inc. v. Weeks*, No. 09-98-293CV, 1998 WL 880866, at *2 (Tex. App.—Beaumont 1998, rev. denied) (per curiam) (counsel not designated as an expert "would not be precluded from testifying as a fact witness as to the time expended on the case, and the trial court could take judicial notice of reasonable attorney fees").  Because Texas law does not require expert testimony to recover "reasonable" attorney's fees under § 38.001 (i.e., as an exception to the American Rule), it certainly does not require an expert report on attorneys' fees incurred as consequential damages from a breach of contract, which need have been only the foreseeable result of the breach.

The other cases Securus cites (at 7-8) are readily distinguishable and do not support the summary judgment relief Securus seeks.  In *Auto Industries Supplier Employee Stock Ownership Plan v. Ford Motor Co.*, 435 F. App'x 430 (6th Cir. 2011), the plaintiff did not offer *any* admissible evidence to establish its damages; here, GTL's invoices were timely disclosed.  In *CQ, Inc. v. TXU Mining Co.*, 565 F.3d 268 (5th Cir. 2009), although the court upheld the

exclusion of damages evidence that had not been disclosed as required by Rule 26, the court noted that the exclusion did not preclude the plaintiff's recovery because other evidence of damages—invoices for worked performed as a result of a breach of contract—were in evidence. *See id.* at 279-80.

Securus cites (at 8) *Santiago-Diaz v. Laboratoria Clinico y de Referencia Del Este & Sara Lopez, M.D.*, 456 F.3d 272, 277 (1st Cir. 2006), where "plaintiff's foot-dragging in announcing her expert . . . deprived the defendants of the opportunity to depose him, . . . pursue countering evidence, or generally prepare their defenses."  In this case, however, there is no damages expert to depose, and Securus had GTL's damages evidence with plenty of time to prepare its defenses or to pursue countering evidence, by, for example, asking questions about that evidence during depositions.  Finally, in *MicroStrategy Inc. v. Business Objects, S.A.*, 429 F.3d 1344 (Fed. Cir. 2005), the excluded damages evidence was not disclosed until trial.  The court noted that the plaintiff "could not cure the surprise without postponing trial and reopening discovery."  *Id.* at 1357.  GTL's damages evidence, on the other hand, was disclosed before the close of discovery and therefore does not require postponing trial or reopening discovery.

## CONCLUSION

For the foregoing reasons, GTL respectfully requests that the Court deny Securus's Motion for Partial Summary Judgment.

Dated:  September 11, 2015

Respectfully submitted,

|  | /s/ E. Leon Carter |
|---|---|
| J.C. Rozendaal (*pro hac vice*) | E. Leon Carter |
| Courtney S. Elwood (*pro hac vice*) | Texas State Bar No. 03914300 |
| Evan T. Leo (*pro hac vice*) | lcarter@carterscholer.com |
| Christopher C. Funk (*pro hac vice*) | John Steven Torkelson |
| Nicholas O. Hunter (*pro hac vice*) | Texas State Bar No. 00795154 |
| KELLOGG, HUBER, HANSEN, TODD, | jtorkelson@carterscholer.com |
| EVANS & FIGEL, P.L.L.C. | Linda R. Stahl |
| 1615 M Street, N.W., Suite 400 | Texas State Bar No. 00798525 |
| Washington, DC 20036 | lstahl@carterscholer.com |
| Tel: (202) 326-7900 | CARTER SCHOLER ARNETT |
| Fax: (202) 326-7999 | HAMADA & MOCKLER PLLC |
|  | 8150 N Central Expressway |
|  | Fifth Floor |
|  | Dallas, TX 75206 |
|  | Tel: (214) 550-8188 |
|  | Fax: (214) 550-8185 |

*Counsel for Defendant and Counterclaim
Plaintiff Global Tel\*Link Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on September 11, 2015, GTL electronically filed the foregoing
document with the Clerk of the Court, using the CM/ECF system, which will send certification
of such filing to all counsel of record.

 /s/ E. Leon Carter