IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURUS TECHNOLOGIES, INC. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:13-CV-03009-K |
| | § | |
| GLOBAL TEL*LINK CORPORATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff/Counterclaim-Defendant Securus Technologies, Inc.'s Rule 12(c) Motion for Judgment on the Pleadings Based on Invalidity of the Counterclaim Patents Under 35 U.S.C. 101 and Brief in Support (Doc. No. 176) (the "Motion for Judgment"). The Court has reviewed the parties' briefs and all related filings and evidence, including the reply and response to the Motion for Judgment and all evidence and appendixes filed in support of the parties' arguments and positions. The Court finds that the claims of the patents in suit are invalid because they fail to claim subject matter that is eligible for patent protection and the Court **GRANTS** the Motion for Judgment.

I.     Background

    A.     Procedural

Plaintiff, Securus Technologies, Inc. ('Securus') initiated the current action by

filing Plaintiff's Original Complaint for Patent Infringement and Demand for Jury Trial. In the Plaintiff's complaint, it alleged that Defendant, Golbal Tel*Link Corporation ("GTL") infringed upon certain patents owned by or assigned to Securus. Securus' claims for patent infringement have been dismissed by the Court by grant of summary judgment in favor of Defendant. But, in the action, GTL asserted counterclaims against Securus, including an assertion that Securus infringed upon patents owned or assigned to GTL. The '581 patent, the '359 patent, and the '171 patent are these patents. GTL has subsequently withdrawn infringement claims related to the '581 patent. The parties' briefing and argument regarding the Motion for Judgment does not address this patent. So, the Court also not address the '581 patent in this order.

  B.  The '359 Patent

The '359 patent, entitled "Investigation and Reporting of Inmate Security Threats," was issued by the USPTO on August 1, 2006. It was assigned to GTL who is the sole owner of the entire right, title and interest in the '359 patent. The '359 patent discloses an invention that monitors inmate involvement and association with security threat groups, such as gangs or criminal organizations. It discloses an invention for collecting information about the threat groups, collecting information about those individuals associated with the threat groups, and using the correlation between the two types of information to monitor the groups' and individuals' related activity. For

example, when an inmate who is suspected of being in a gang dials a phone number that is also associated with that gang, the system will turn on a recording device to record the phone call and alert the prison staff.

    C.    The '171 Patent

The '171 patent, entitled "Method and System for Call Tracking to Discover Inmate-Employee Fraternization" was issued by the USPTO on May 2, 2006. It was assigned to GTL who is the sole owner of the entire right, title, and interest in the '171 patent. The '171 patent discloses an invention for detection of prison employee/inmate fraternization. It does this by monitoring inmate phone calls and associating and correlating those calls to known prison employee information. Doing so, the system can potentially indentify any improper fraternization between an inmate and a prison employee.

II.    Applicable Law

    A.    Subject Matter Eligibility Under 35 U.S.C. §101

A motion for judgment on the pleadings under Rule 12(c) should be granted if the complaint lacks a cognizable legal theory. *Doe v. My Space, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). Patent subject matter eligibility under 35 U.S.C. 101 is a question of law suitable for resolution at the pleading stage of patent litigation matter. *Content Extraction and Transmission LLC v. Wells Fargo Bank, NA*, --- F.3d ----, 2014 WL 7272219 (Fed. Cir. Dec. 23, 2014).

35 U.S.C. §101 provides that "whoever invents of discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. §101. This section defines the subject matter of inventions that an inventor may obtain a patent for. But, claims that attempt to purely cover laws of nature, natural phenomenon, and abstract ideas are not eligible for patent protection because these are implicitly excepted from 35 U.S.C § 101. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S.Ct. 2347, 2354 (2014); *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972); *Ultramercial, Inc., v. Hulu, LLC*, 772 F.3d 709, 711-715 (Fed. Cir. 2014). These judicial exceptions are not patent eligible subject matter because they are the basic tools of invention and innovation that are free for all to use. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010).

In order to determine if a claim recites patent eligible subject matter, the claim must be analyzed under a two part test. *Alice*, 134 S.Ct. at 2354. Under the first part of this test, one must make a determination if the claim is directed to or recites a judicial exception. *Id*. If no judicial exception is presented in a claim, then the subject matter of the claim is not barred from patent protection and the second part of the test does not apply. *Id*. But, if a judicial exception is presented in the claim, then the claim must be further analyzed under the second part of the test. *Id*. Under the second part of the test the claim is analyzed to determine if the claim recites something more than the judicial

exception. *Id*. This part of the test looks for an inventive concept in the claim beyond the judicial exception. *Id*. If there is an inventive concept present in the claim, then the claim recites patentable subject matter. *Id*. If there is not something more or an inventive concept then the claim does not recite patentable subject matter because it is an attempt to patent the judicial exception itself. *Id*. In addition, implementing a judicial exception using well known components or function, limiting the idea to a particular field of use, or adding extra solution activity to the claim are not inventive concepts that add something more to a judicial exception. *Id*. The principles apply equally to method, system, and other claims. *Id*

III.   Court's Analysis Of The Claims Of The Patents In Suit

   A.   The Claims Of The '359 Patent

The claims of the '359 patent are directed to correlations between security threats, security threat groups, and inmate communications. The claims in dispute are Claims 1, 2, 3, 4, 5, 6, 7, 8, 11, 13, 14, 15, 16, 17, 20, and 21. Claim 1 of the '359 patent reads as follows:

> A method for identifying telephone call activities that pose potential security threats, comprising:
> storing first information regarding security threat groups;
> storing second information regarding inmates known to be affiliated with the security threat groups;
> storing call detail records associated with telephone calls to or from inmates associated with a correctional facility; and
> using the call detail records and the first and second information to identify telephone call activity associated with one of the security

threat groups. '359 Patent 11:63-12:6.

There are also a number of claims that are dependent on Claim 1. These add additional limitations regarding things such as the nature of the information that is stored, the possibility of storing information from multiple correctional facilities, updating the information, and actions to be taken when using the call details and stored information indicates a possible relationship to a security threat group.

Independent Claims 13 and 14, claim a similar invention as that claimed in Claim 1, but Claim 13 is directed to a computer program used to store and compare the information and call details and Claim 14 is directed to a system that does essentially the same thing. Claim 14 has a number of claims that are dependent on it and that add limitations similar to those that depend from Claim 1.

B. The Claims Of The '171 Patent

The claims of the '171 patent are directed to correlations between inmate communications and employees of a correctional facility. The claims in dispute are Claims 1, 2, 5, 6, 7, 8, 9, 10, 13, 14, 15, 16, 17, 23, and 27. As an example of a representative claim, Claim 1 of the '171 patent reads as follows:

> "A method of discovering inmate-employee fraternization comprising:
> monitoring a plurality of inmate communications;
> comparing the plurality of monitored inmate communications to
>     information relating to inmates and employees located in a database;
> determining, based at least on the results of the comparing, if one or
>     more of the plurality of communications indicate that an employee

>  and inmate are fraternizing; and
> 
>  performing a predetermined action if one of the plurality of communications indicates that the employee and inmate are fraternizing." '171 Patent 10:13-25.

There are a number of claims that depend on Claim 1. These dependent claims add limitations that include: specifying what type of predetermined action is taken; specifying the types of communications that are monitored; and specifying the type of information that is collected during when communications are monitored.

Independent Claims 9, 17, and 24 are directed toward the same type of invention as that in Claim 1, but Claim 9 is a system claim, Claim 17 is a claim to information storage media, and Claim 24 is another method claim. These independent claims have additional dependent claims that add limitations that are similar to those added to Independent Claim 1 by its dependent claims.

### C. Treatment Of The Claims Of The Patents in Suit

In their briefing regarding subject matter eligibility, both parties, for the most part, collectively address all of the asserted claims of both patents in suit. The parties only make distinctions between the between the claims included in a particular patent or the claims from one patent to the other when necessary to support their arguments and positions. So, the Court will collective address all of the claims in both patents in suit and note the relevant differences in application of the law to the specific claims if necessary.

D. The Claims Of Both Patents In Suit Are Directed Toward An Abstract Idea.

The Court is of the opinion that all of the claims in dispute are directed toward an abstract idea. The first step in the *Mayo* two part test is to determine if the claims are directed toward an abstract idea.

In the case of the '359 patent, the claims are directed to the abstract of idea of comparing collections of information to see if there is a match between sets of information. Using Claim 1 of the '359 patent as an example, this claim requires that information be collected and stored, including information about security threat groups; inmate associations with security threat groups, and inmate communication information. The claim then goes on to require that the sets of information be compared to each other to determine a connection between the sets of information. This presents the abstract of idea of comparing information to make a match or determination.

The disputed claims of the '171 patent are directed toward the same abstract idea. Even though the claims of the '171 patent are worded a little differently than those of the '359 patent, they are still directed toward the same abstract idea of comparing sets of information to make a match or determination. The difference being that the claims of the '171 patent are directed toward detecting employee inmate fraternization instead of security threats. Using Claim 1 as an example, this claim requires collecting inmate

communication information and comparing that information to employee information and then comparing the sets of information to determine if employee and inmate fraternization is occurring. The claim then goes on to require that an action be taken if possible fraternization is detected. Like in the claims of the '359 patent, this claim is directed toward the abstract idea of comparing information to make a match or determination.

The other independent claims of both patents in suit are addressed to the same abstract idea, just in different claim forms. The fact that these other independent claims may be directed toward systems, computer programs, and information storage media does not change the analysis. These claims include very similar limitations that Claim 1 of the '359 patent and Claim 1 of the '171 patent contain. So, these are also directed toward the same abstract idea.

Because all of these claims are directed toward an abstract idea, under *Mayo*, the claims must be further analyzed to see if they contain something more than the abstract idea or an inventive concept.

E.  The Claims Lack An Inventive Concept

The Court is of the opinion that the all of the claims of both patents in suit lack the "something more" or "inventive concept" that would make the claims subject matter eligible. In order to save a claim that is directed to an abstract idea, the inventor must include in the claim limitations something more

than the pure abstract idea. This something more has been characterized as an inventive concept that must be in the claim.

All of these claims lack an inventive concept. For example, Claim 1 of the '359 Patent has limitations that require collection and storage of information and comparison of that information to make a match or determination. This is the abstract idea. This claim has no other limitations. That is simply all that is required of the claim. Since all of the claim limitations together describe implementation of the abstract idea, there is nothing left that can be an inventive concept.

The claims of the '171 patent suffer from the same problem. Using Claim 1 as an example, the claim requires the collection and storage of sets of information and comparison of that information to make a match or determination. This, again, is the abstract idea of the claim. In this case, the claim goes on to require at least one more limitation, which is taking of a predetermined action if there is a match or positive determination. This claim limitation does not add any inventive concept to the claim. This limitation is likely just another part of the abstract idea because there would be no point in comparing information to make a match or determination if one was not to take some type of action in response to a positive match or determination. Even if this limitation is not a part of the abstract idea, it is nothing more than extra

solution activity, which does not add an inventive concept to the claim.

The dependent claims of both patents in suit do not add any inventive concepts to the claims. The dependent claims of both patents in suit add limitations regarding what type of information is collected, what type of communications are monitored, the details of the information collected, where the information is collected from, and what type of actions are performed if there is a match. All of the limitations added by the dependent claims do nothing to add an inventive concept to the claims. For example, specifying in detail the type of information that is stored, specifying the type of communications that are monitored, and specifying the sources of the information does nothing to change the fact that the claims are directed to the abstract idea of comparing sets of information to make a match. These just simply describe the possible source of types of information that are stored and compared. And, requiring a specific action to be taken if there is a match is extra solution activity. None of these limitations add an inventive concept to the claims in dispute.

The Court is not persuaded by GTL's argument that these claims are not directed to an abstract idea and even if they were, there is an inventive concept in the claims. GTL argues that these claims are directed to something more than simply comparing information to make a match. It argues that these

claims are directed towards inventions that collect useful security information because they are designed to collect a wealth of data about potential problems before the problems occur. Under GTL's analysis of the claims, the claims are directed toward the concrete idea of generating useful intelligence and that at the very least this is an inventive concept that saves the claims. GTL also argues, that because this is the case, the claims are also not a computer implementation of what has been done in the past.

In support of this argument GTL points to many instances in the patents' specifications that describe that this is the type of invention that the patentee disclosed. The Court agrees with GTL that an invention that generates useful intelligence, as described by GTL, would be at least an invention that contained an inventive concept and possibly would be an inventive directed to a concrete idea instead of an abstract idea. The Court also agrees with GTL that it is very possible that the description of the invention provided in the patents' specifications describe this invention. The problem with GTL's argument is that this is not what is claimed.

The claims say nothing about generating useful intelligence information. The Court has already gone over the claims, so there is no need to recite that analysis again, but in short the claim limitations stop at the abstract idea. They do not add the inventive concept that is included in the

specifications. A subject matter eligibility analysis focuses on what is claimed, i.e. the actual claim language, not on what is disclosed in the specification. In its arguments, GTL has failed to focus on the claim language itself and has focused on the specification. This does nothing to save these claims. If the inventors wanted these claims to cover this inventive concept, the concept should have been included in the claim language. Instead the inventors chose not to include this language, probably in order to obtain broader claims. The inventors cannot come back now, when validity of the claims is threated, and add that inventive concept back into the claims. And, it is certainly not the Court's role to rewrite these claims to add what the inventors could have added but chose not to add.

The Court is also not persuaded by GTL's arguments that these claims do not seek to create a monopoly on an abstract idea because they are limited to the area of technology of prison security. The claims, as written, are limited to this area of technology. But, limitation to a particular field does make an abstract idea a patentable idea, i.e. it does not transform non subject matter eligible claims into subject matter eligible claims. So, the Court also rejects this argument.

F.  Conclusion

The claims in dispute attempt to claim subject matter that is not eligible for patent protection. The claims fail the *Mayo* two part test because

they are directed toward an abstract idea and do not add an inventive concept to that abstract idea. So, for these reasons the Court hold that Claims 1, 2, 3, 4, 5, 6, 7, 8, 11, 13, 14, 15, 16, 17, 20, and 21 of the '359 patent and Claims 1, 2, 5, 6, 7, 8, 9, 10, 13, 14, 15, 16, 17, 23, and 27 are invalid. Therefore, because Court finds that the claims of the patents in suit are invalid, the Court **GRANTS** the Motion for Judgment.

    SO ORDERED.

    Signed November 2nd, 2015.

                                  *Ed Kinkeade*
                                  ED KINKEADE
                                  UNITED STATES DISTRICT JUDGE